Williams, Judge,
delivered the opinion:
The plaintiff is the executrix of the estate of Lewis G. Briggs, deceased, who during the period from July 1, 1922, to November 21, 1929, on which date he died, was a. master sergeant, United States Army, assigned to duty at Fort Monmouth, New Jersey.
Suit is brought to recover the difference between the cash value- of the Army rations, plus 10 per, cent, which decedent was paid, and the daily subsistence allowance of $1.20, for the period from July 1, 1922, to March 1, 1929, excepting the five months’ period from February 1, 1927, to June 30, 1927, during which time he received a monetary allowance of $1.20 per day.
The claim is based on the provisions of section 11, act of June 10, 1922, 42 Stat. 625, 630, and Executive Order No. 3694, issued June 19, 1922. The statute provides:
“ To each enlisted man not furnished quarters or rations in kind there shall be granted, under such regulations as the President may prescribe, an allowance for quarters and subsistence, the value of which shall depend on the conditions under which the'duty of the man is being performed, and shall not exceed $4 per day.”
The Executive order reads:
“ Executive Order
“ Under authority of the act of Congress, approved June 10, 1922, the following allowances for quarters and subsistence for enlisted men, who are not furnished quarters or rations in land are announced * * *
*630 “ Table
“ 1. Men on duty where quarters or rations in kind are not furnished will be granted daily allowances as follows:

During the period of the claim appropriate quarters were not available and were not furnished to the decedent at the reservation. He lived with his wife in a rented house some distance from the fort, on which he paid the rent from his own funds. He was allowed and .paid the commutation allowance of 75 cents a day for quarters during the entire period and that matter is not involved in suit.
The decedent, by proper orders, was attached to the Detachment Quartermaster Corps for rations. Messing facilities were provided at the fort for the unit to which he was attached and were available to him.. He did not, however, eat with his mess, and elected for his own convenience, and was permitted by his superior officers, to take his meals at home with his wife. Rations in kind — -that is, the food itself — were not actually delivered to the decedent, but he ivas paid the monetary value of such rations, plus ten per cent, in accordance with the prevailing practice in such cases.
The plaintiff contends that rations in kind were not furnished to the decedent and that under the plain provisions of the statute and the Executive order he was entitled to receive $1.20 per day allowance in lieu thereof. It is urged that he was as much entitled to this allowance under the facts and circumstances stated as he was to his statutory base pay, and that the acts of his superior officers in denying the allowance was in utter disregard of his legal rights.
An Army ration consists of a fixed quantity of certain foods and ingredients for cooking per man, per day, the value of which is determined by the quartermaster each *631 month from the cost price of one hundred such units. During the period of the claim the valúe of a ration varied, being 30 cents per day in 1922 and from 49 to 53 cents per day in 192T.
Enlisted men are carried on a ration return of the troop, company, or other military unit to' which they belong. The total rations to be credited to the troop are determined by such return and are drawn and issued -against such ration account. If the drawing of supplies does not exhaust the monthly ration allowance, the unit in question receives the value of the difference, and is charged and required to pay the value of any rations overdrawn. An enlisted man who does not eat with the troop or company mess is listed on the back of the ration return and is entitled to receive each month the value of his rations, plus 10 per cent. In a month of 30 days he is entitled to receive the value of 33 rations, and for a month -of 31 days, the value of 34 rations. The total amount of the value of the ration allowance listed on the reverse side of the ration return is paid to the individual soldier entitled to receive it.
The decedent was paid the monetary value of the rations in kind, as outlined above. The record does not disclose the exact amount received by him for rations and it is stated that this information is not available iii the files of either the War Department or the General Accounting Office. There is no claim, however, that he was not paid the full value of the rations he was entitled to receive, plus 10 per cent, as shown on the ration return of the unit to which he belonged.
The plaintiff argues that since the Government did not furnish the decedent with the rations in kind — that is, that he did not eat the food itself — the decedent’s status .in respect to his right to commutation of rations at $1.20 per day is identical to his status in respect to commutation of quarters at 75 cents per day, which was allowed and paid to him. This contention can not be sustained. The decedent’s situation in respect to quarters and to rations in kind was not at all alike. No public quarters were available. He was, therefore, clearly entitled to commutation of quarters at the rate per day fixed in the Executive order. Quar *632 ters at the post were denied him because none were available for his occupancy. The contrary is true as to rations. The Government maintained a mess at the post where decedent was stationed, to which he was by proper orders attached. The mess to which he was assigned received the authorized amount of public money to provide the ration. The decedent elected not to eat at the mess, and took his meals at home with his wife, receiving the monetary value of his rations, plus 10 per cent.
The act of June 10, 1922, made no change in the methods then authorized by law and existing regulations for quartering and rationing enlisted men. Its purpose was to make the methods then in force uniform in the various services to which the act applied and to authorize the President to publish regulations to that effect. Section 21 of the act reads:
“ That nothing in this act shall operate to change in any way existing laws, or regulations made in pursuance of law, governing pay and * * * allowances in kind for rations, quarters, heat, and light for enlisted men * *
Paragraph 1229 of the Army Regulations then in force provided:
“ Commutation of rations will not be allowed to enlisted men serving where subsistence is furnished by the Government.”
Paragraph 1209 dealing with ration returns and accounts provided:
“ * * * Single ration returns will be submitted for organizations, including persons permitted to mess separately, and will embrace all persons actually present.”
The decedent, as stated, was duly assigned to a mess unit. His name was carried on the mess ration return as required by Army regulations. The monetary value of his rations, plus 10 per cent, under a permissible arrangement, was paid to him. We think under the circumstances he was furnished with rations in kind within the meaning of the statute and the Executive order relied upon by the plaintiff. The arrangement by which he received the value of the rations, plus 10 per cent, was in the nature of a voluntary sale by decedent of his rations in kind for the cost price thereof. *633 without going through the form of delivery and redelivery in kind. Jaegle v. United States, 28 C. Cls. 133.
The decedent having been furnished rations in kind was not entitled to be paid the subsistence allowance of $1.20 a day. This allowance is payable only when rations in kind are not furnished. See Jones v. United States, 60 C. Cls. 552; Smith v. United States, 62 C. Cls. 23.
Whaley, Judge; Littletoet, Judge; GeeeN, Judge; and Booth, Chief Justice, concur.